IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 23-CR-260 (TJK) |
| | : | |
| v. | : | 18 U.S.C. § 231(a)(3) |
| | : | 18 U.S.C. § 111(a)(1) |
| | : | 18 U.S.C. § 1752(a)(1) |
| JACQUELYN STARER, | : | 18 U.S.C. § 1752(a)(2) |
| | : | 18 U.S.C. § 1752(a)(4) |
| Defendant. | : | 40 U.S.C. § 5104(e)(2)(D) |
| | : | 40 U.S.C. § 5104(e)(2)(F) |
| | : | 40 U.S.C. § 5104(e)(2)(G) |

**JOINT STATEMENT OF OFFENSE**

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Jacquelyn Starer, with the concurrence of the defendant's attorneys, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives

Page 1 of 11

and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department (MPD) were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted

those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. The defendant, Jacquelyn Starer, of Ashland, Massachusetts, traveled to Washington, D.C. around January 5, 2021, with plans to attend a rally at the Capitol.

9. The defendant attended the Trump speech at the Ellipse in the morning of January 6, 2021, then made her way to the U.S. Capitol. She entered the East Rotunda Doors of the U.S. Capitol at approximately 2:51 p.m. She then traveled to the Capitol Rotunda.

10. At approximately 2:58 p.m., a group of Metropolitan Police Department and USCP officers stood in a line to protect the west entrance of the Capitol Rotunda near former Speaker Pelosi's office. Rioters confronted and yelled at the officers. Officers directed the rioters by

pushing their batons forward and directing the rioters to back up. A rioter placed himself in front of the line of officers with his arms spread out facing the rioters. That rioter yelled, "No! No! No!"

11. At approximately 2:59 p.m., the defendant moved through the crowd of rioters at the west entrance of the Rotunda and to the front of the police line. The defendant approached the line of officers. The defendant pushed up against the rioter with outstretched arms and pointed her finger in the direction of the officers. The defendant grabbed the arm of the rioter with outstretched arms and pushed it down. She then turned to face the rioter, with her side to the line of officers, including the arm of MPD Officer M.B. M.B. was dressed in an MPD uniform with a bike helmet, reflective jacket, vest, and badge.

12. MPD Officer M.B. pushed the defendant away from the line of officers, and the defendant struck MPD Officer M.B. with her closed fist. Body-worn camera footage, recorded by Metropolitan Police Department officers, as well as video recorded by others in the Rotunda, documents the assault. The defendant moved away from the officers and then stepped towards them again, moving her hands toward Officer M.B. The defendant yelled, "Fucking bitch!"

13. Shortly thereafter, a physical altercation between rioters and officers ensued inside the Rotunda, as the officers attempted to restrict the rioters' passage and rioters continued to press against the police line. During that altercation, officers deployed a chemical irritant in an effort to contain the mob. The defendant was exposed to the chemical irritant and was affected by it.

14. The defendant exited the Capitol through the East Rotunda Doors at approximately 3:06 p.m.

## *Statutory Maximum Penalties for the Offenses*

15. The Defendant faces up to the following for the below referenced offenses, in addition to any restitution:

a. Count 1 - 18 U.S.C. § 231(a)(3): five years imprisonment, three years of supervised release, $250,000 fine, $100 special assessment.

b. Count 2 - 18 U.S.C. §111(a): eight years imprisonment, three years of supervised release, $250,000 fine; $100 special assessment.

c. Count 3 – 18 U.S.C. § 1752(a)(1): one year imprisonment, one year of supervised release, five years of probation; $100,000 fine; $25 special assessment.

d. Count 4 - 18 U.S.C. § 1752(a)(2): one year imprisonment, one year of supervised release, five years of probation; $100,000 fine; $25 special assessment.

e. Count 5 - 18 U.S.C. § 1752(a)(4): one year imprisonment, one year of supervised release, five years of probation; $100,000 fine; $25 special assessment.

f. Count 6 - 40 U.S.C. § 5104(e)(2)(D): six months imprisonment, five years of probation; $5,000 fine; $10 special assessment.

g. Count 7 - 40 U.S.C. § 5104(e)(2)(F): six months imprisonment, five years of probation; $5,000 fine; $10 special assessment.

h. Count 8 - 40 U.S.C. § 5104(e)(2)(G): six months imprisonment, five years of probation; $5,000 fine; $10 special assessment.

*Elements of the Offenses*

16. Defendant Jacquelyn Starer knowingly and voluntarily admits to all of the elements to which she is pleading.

17. The parties agree that Civil Disorder (18 U.S.C. § 231(a)(3)) requires the following elements:

  a. First, the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers;

  b. Second, at the time of the defendant's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder; and

  c. Third, that civil disorder in any way obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct and performance of a federally protected function.

18. The defendant admits that she knowingly acted with the intent to obstruct, impede or interfere with Officer M.B., an officer with the Metropolitan Police Department, while Officer M.B. was engaged in the lawful performance of her official duties, incident to and during the commission of a civil disorder which adversely affected commerce and the performance of a federally protected function.

19. The parties agree that Assaulting, Resisting, or Impeding Certain Officers (18 U.S.C. §111(a)) requires the following elements:

  a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer M.B., an officer with the Metropolitan Police Department.

  b. Second, the defendant did such acts forcibly.

  c. Third, the defendant did such acts voluntarily and intentionally.

  d. Fourth, Officer M.B. was assisting officers of the United States who were then engaged in the performance of their official duties.

e. Fifth, the defendant made physical contact with Officer M.B. or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offense charged in Count One of the Indictment.

20. The defendant admits that she knowingly and intentionally struck Officer M.B. in the Rotunda of the U.S. Capitol. The defendant further admits that at the time she forcibly struck Officer M.B., the defendant knew Officer M.B. was engaged in the performance of her official duties. The defendant made physical contact with Officer M.B. when she struck the officer with a closed fist.

21. The parties agree that Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1)) requires the following elements:

　　a. First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

　　b. Second, the defendant did so knowingly.

22. The defendant admits that she knowingly entered and remained in a restricted building and restricted grounds without lawful authority.

23. The parties agree that Disorderly and Disruptive Conduct in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(2)) requires the following elements:

　　a. First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

　　b. Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

    c. Third, the defendant's conduct occurred when, or so that, her conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

24. The defendant admits that she knowingly and intentionally engaged in disorderly and disruptive conduct in, and in proximity to, the restricted building and grounds; and that her conduct in fact impeded and disrupted the orderly conduct of Government business and official functions.

25. The parties agree that Engaging in Physical Violence in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(4)) requires the following elements:

    a. First, the defendant engaged in an act of physical violence against Officer M.B. in, or in proximity to, a restricted building or grounds.

    b. Second, the defendant did so knowingly.

26. The defendant admits that she knowingly engaged in an act of physical violence against a person in a restricted building and restricted grounds.

27. The parties agree that Disorderly Conduct in a Capitol Building (40 U.S.C. § 5104(e)(2)(D)) requires the following elements:

    a. First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

    b. Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress of either House of Congress.

    c. Third, the defendant acted willfully and knowingly.

28. The defendant admits that she willfully and knowingly engaged in disorderly and disruptive conduct in the United States Capitol Building; and that she did so with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress.

29. The parties agree that Act of Physical Violence in the Capitol Grounds or Buildings (40 U.S.C. § 5104(e)(2)(F)) requires the following elements:

   a. First, the defendant engaged in an act of physical violence within the Capitol Buildings or Grounds.

   b. Second, the defendant acted willfully and knowingly.

30. The defendant admits that she willfully and knowingly engaged in an act of physical violence within the Capitol Building.

31. The parties agree that Parading, Demonstrating, or Picketing in a Capitol Building (40 U.S.C. § 5104(e)(2)(G)) requires the following elements:

   a. First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

   b. Second, the defendant acted willfully and knowingly.

32. The defendant admits that she willfully and knowingly paraded and demonstrated

in the Capitol Building.

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES
                                        United States Attorney
                                        D.C. Bar No. 481052

By:   */s/ Sarah W. Rocha*
                                        SARAH W. ROCHA
                                        Trial Attorney / Detailee
                                        DC Bar No. 977497
                                        601 D Street, N.W.
                                        Washington, D.C. 20530
                                        sarah.wilsonrocha@usdoj.gov
                                        (202) 330-1735

## DEFENDANT'S ACKNOWLEDGMENT

I, Jacquelyn Starer, have read this Statement of the Offense and have discussed it with my attorneys. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: April 29, 2024

JACQUELYN STARER
Defendant

## ATTORNEYS' ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 4/29/24

ROBERT L. SHEKETOFF
Attorney for Defendant

Date: 4/29/24

DANIEL CAPPETTA
Attorney for Defendant